## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Patricia A. Darke,                                  Civil File No. 06-996 PJS/RLE

        Plaintiff,

vs.                                                 **MEMORANDUM OF LAW
                                                    IN SUPPORT OF
Lurie Besikof Lapidus & Company, LLP,               DEFENDANT'S MOTION
                                                    FOR SUMMARY
        Defendant.                         JUDGMENT**

_____

### INTRODUCTION

      Plaintiff Patricia Darke has brought claims against her former employer, Defendant Lurie Besikof Lapidus & Company, LLP, for breach of contract, sex discrimination and retaliation in violation of Title VII of the Civil Rights Act and the Minnesota Human Rights Act, and constructive discharge.  Defendant Lurie Besikof Lapidus & Company, LLP brings this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on the grounds that Plaintiff had no employment contract, Plaintiff cannot prove a prima facie case of sex discrimination or retaliation, or that the reasons for Defendant's actions were a pretext for discrimination, and Plaintiff voluntarily resigned her position.

### FACTS

      Lurie Besikof Lapidus & Company, LLP ("LBLCO") is an accounting and consulting firm with approximately 130 employees.  The Leadership Group, a

small division of LBLCO, trains members of its client base in coaching, counseling and hiring, using the Predictive Index tool.   Deposition of Farley Kaufmann ("Kaufmann") (hereinafter "Kaufmann Dep."), pp. 13-14.   Predictive Index is licensed to LBLCO by Praendex, and LBLCO has been a licensee for many years.   However, it was used only within the firm until Randy Vick ("Vick") was hired in 1989 to grow the Predictive Index business outside the firm. Kaufmann Dep., p. 37.   Vick had a college degree, and had 13 years of experience with Predictive Index before joining LBLCO.   Affidavit of Donna L. Roback (hereinafter "Roback Aff."), Ex. 4.   Vick grew the Predictive Index practice. Kaufmann Dep., p. 38.

Vick was compensated on a graduated commission schedule based on collections from his sales and partner referrals.   Vick paid all his own expenses from his commissions, including medical, retirement, seminars and profit sharing (both his and the firm's contribution).   Vick was not guaranteed a base salary, and any shortfalls had to be repaid.   Kaufmann Dep., pp. 43-45, 56-57, 170, 210.   Vick was unhappy with his compensation, and left LBLCO in 2003 after 14 years of employment.   Vick had requested a greater percentage of sales and was denied. Kaufmann Dep., pp. 46-48; Deposition of Patricia Darke ("Darke") (hereinafter "Darke Dep."), pp. 45-46.

Chad Stelljes ("Stelljes") was the number two person in the department before Darke was employed.   He was hired to train in Predictive Index, general

sales and to service clients. Stelljes was paid a base salary along with commissions on sales he generated.  Kaufmann Dep., pp. 42-43.

Darke applied for a position in the Leadership Group at LBLCO in July 2000.  Darke did not have a college degree, had only six months experience selling and marketing consulting tools, and no experience with Predictive Index.  Darke Dep., pp. 10-11, 29; Roback Aff., Ex. 5. Darke left her previous employer, the Prysm Group, because the company was in financial distress.  Darke Dep., p. 23. Darke filled out an application for employment prior to being interviewed.  The application she signed contained the following language:

> In consideration of my employment, I agree to conform to the company's rules and regulations and I agree that my employment and compensation can be terminated with or without cause and with or without notice at any time at either my or my company's option.  I also understand and agree that the terms and conditions of my employment may be changed with or without cause and with or without notice at any time by the company.   I understand that no company representative, other than its President, and that only when in writing and signed by the President, has any authority to enter into any agreement for employment for any specific period of time or to make any agreement contrary to the foregoing.

Roback Aff., Ex. 5.  Darke acknowledges she was an employee at-will during her employment with LBLCO.  Darke Dep., p. 24.

Darke met with Kaufmann, Managing Partner, in May 2000 to discuss the position and compensation.   They discussed a base salary and estimated commissions based upon numbers from business other people had generated.

Darke Dep., pp. 34-35; Kaufmann Dep., pp. 79-81.   After the interview, Darke received a letter confirming the terms of her employment.   Darke's compensation for the first year was set at a $50,000 base salary, plus 20% commission on Predictive Index sales.   She was also eligible for fee commissions for referring new accounting clients.   Roback Aff., Ex. 6.   Darke's initial title was Senior Consultant to sell and service Predictive Index.   Darke Dep., p. 28.   There were only three people in the Leadership Group:   Vick, Darke, and an administrative assistant.   Kaufmann Dep., pp. 42, 56.

Darke received regular increases in her base salary.   Roback Aff., Ex. 7. Darke wanted to make $90,000, but she did not bring in enough Predictive Index sales to achieve the level of estimated commissions in 2001 and never reached $80,000 of cross-selling.   Darke Dep., pp. 34, 38-39.   Darke claims the market affected both her and Vick's business.   Darke Dep., p. 39.

When Vick left LBLCO in April 2003, Darke was promoted into his job and asked for Vick's compensation package.   Darke Dep., p. 42.   Darke never knew the terms of Vick's compensation package prior to this litigation, and she does not know if he received straight commissions or if he had to pay expenses out of his commissions.   Darke Dep., pp. 34, 41.   When Darke asked for Vick's compensation package, she was told by Kaufmann that it was no longer available. Darke Dep., p. 40; Kaufmann Dep., p. 103.

In 2003, LBLCO made a business decision that the previous compensation plan, based primarily on commissions from individual sales of new business, made

the Leadership group employees too competitive.  In order to foster teamwork, a new commission plan was implemented, based on a departmental incentive and using a formula that rewarded individuals on departmental sales.  Kaufmann Dep., p. 105.

In May 2003, Darke was offered a compensation package which she accepted in writing. Roback Aff., Ex. 8. Darke's compensation was increased to a guaranteed monthly draw of $10,000, or $120,000 per year, plus commissions on total department sales  If her draw exceeded her commissions, she did not have to reimburse the firm.  Darke Dep., p. 45; Roback Aff., Ex. 8.

In July 2004, Darke received the title of President of the Leadership Group, and was offered a directorship.  Darke Dep., p. 47.  Directors are non-partners who are distinguished as valuable employees.  The title of Director is conditioned upon signing a Director's Agreement, which provides for deferred compensation and requires agreement to a noncompete provision.  Darke Dep., pp. 48-49; Kaufmann Dep., pp. 28-30.

The Director's Agreement is a standardized agreement.  Kaufmann Dep., p. 137; Deposition of Greg Cornman ("Cornman") (hereinafter "Cornman Dep."), p. 52.  Darke complained that the provision for deferred compensation and the noncompete provision were not relevant to her position.  Darke Dep., p. 49; Kaufmann Dep., pp. 145, 147.  Darke also complained that the Director's Agreement contained a minimum number of work hours.  Darke Dep., p. 50.  This was a standard provision in order to determine vesting.  Kaufmann Dep., p. 150.

Kaufmann agreed to revise the agreement to address Darke's main concerns and to tailor the agreement to Darke's commissioned sales position. Darke Dep., p. 49; Kaufmann Dep., p. 149. After reviewing the agreement with an attorney, Darke refused to sign the Director's Agreement. She stated that the amount of deferred compensation was not enough to support the noncompete provision. Darke Dep., pp. 49-50. The Directorship was then withdrawn. Kaufmann Dep., p. 152. Kaufmann advised Darke that she would retain her title and duties as President of the Leadership Group, notwithstanding her refusal to sign the Director's Agreement. Darke Dep., p. 54; Kaufmann Dep., pp. 152-153.

Darke was concerned that she would be demoted and stripped of her duties because she did not sign the Director's Agreement. However, when Darke questioned Cornman, Human Resource Manager, through email, he responded that all her duties remained in place. Roback Aff., Ex. 9.

Darke claims that Cornman threatened her with demotion and possible termination. Darke Dep., p. 51. Darke met with Kaufmann on May 11, 2005, immediately after Cornman's alleged threats. Darke took notes of her meeting with Kaufmann. Roback Aff., Ex. 10. At the meeting, Kaufmann told Darke that he did not want her to leave, that she would not be demoted or terminated, and if Cornman told her that (which Cornman denies), he had no authority to do so. Darke Dep., pp. 52-54; Kaufmann Dep., pp. 112-114; Roback Aff., Ex. 10. Kaufmann reassured Darke that she would retain her title and duties as President of the Leadership Group. Darke's notes of that meeting confirm that Kaufmann

told her he did not want her to leave, and she was not going to be demoted or terminated. He apologized for any stress the process caused and asked what he could do to help relieve the stress.  Darke replied that the company could correct her compensation issues. Her notes also confirm Kaufmann asked her for a new compensation proposal to give to the Compensation Committee.  Darke Dep., pp. 52-54; Kaufmann Dep., p. 107; Roback Aff., Ex. 10.

Darke never forwarded a proposal to the Compensation Committee.  Darke Dep., p. 55. Instead, she submitted a letter of resignation dated May 16, 2005, which stated that her attorney would forward a severance demand.  Darke's resignation letter doesn't complain about a breach of contract or gender discrimination. Darke Dep., p. 55; Roback Aff., Ex. 11.  Upon receipt of her resignation letter, Kaufmann wrote a letter to Darke on May 17, 2005 telling her she was a valuable employee and asked her to reconsider her resignation and remain in her position.  Darke Dep., p. 55; Kaufmann Dep., p. 196; Roback Aff., Ex. 12.  Instead, Darke replied through an attorney, and in a memorandum to Darke dated May 25, 2005, Kaufmann accepted her resignation, acknowledging May 31, 2005 as her last day of employment.  Roback Aff., Ex. 13. After her resignation, Darke requested and received a bonus check for $10,000.  Darke Dep., p. 84.

While employed by LBLCO, Darke always complained about her compensation; however, she never claimed it was gender discrimination. She states: "I had also watched them force out Vick, and I saw the same thing starting

to happen to me." Darke Dep., p. 68. She never filed a formal complaint of gender discrimination even though there is a complaint process in the Employee Handbook. Cornman Dep., pp. 17-18. Darke Dep., p. 78. Darke claims a pattern and practice of adverse treatment towards women at the firm. (Complaint, ¶ 18). Over the years, both male and female employees have complained that certain partners were rude and abusive to them. Darke does not know if males as well as females were treated the same. Darke Dep., pp. 69-72, 75. Gender was never mentioned in any complaints. Kaufmann Dep., pp. 126-130; Cornman Dep., p. 16.

Darke filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 18, 2006 and, on March 7, 2006, she filed this lawsuit alleging breach of contract, sex discrimination in violation of Title VII and the Minnesota Human Rights Act ("MHRA"), retaliation in violation of Title VIII and the MHRA, and constructive discharge.

## ARGUMENT

### I.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be used as a tool to dispose of claims that are either factually unsupported or based on undisputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. United States, 817 F.2d 1328, 1331 (8th Cir. 1987). This Court may grant summary judgment if the pleadings and all the documents before the Court reveal no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In determining whether a genuine issue of material fact exists, courts look to both materiality and genuineness of the fact allegedly in dispute.  Id. at 250. The materiality of the fact is determined from the substantive law governing the claim; only disputed facts that might affect the outcome of the suit are relevant on summary judgment.  Id. at 252; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988).  A genuine dispute requires that the evidence be such that it could cause a reasonable jury to return a verdict for either party.  Liberty Lobby, 477 U.S. at 252.

It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of the claim.  Celotex, 477 U.S. at 324.  The non-moving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of LeSeuer, 47 F.3d 953, 957 (8th Cir. 1995).  Furthermore, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment ….  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

## II.     PLAINTIFF CANNOT MAINTAIN A BREACH OF CONTRACT CLAIM

### A.     Darke was an At-Will Employee, and had No Written Contract of Employment.

Plaintiff is alleging breach of contract.  Darke acknowledges she was an at-will employee during her employment with LBLCO.  Darke Dep., p. 24.  She admits signing an application for employment and well as two receipts for employee handbooks which contain language acknowledging her at-will status. The application she signed put her on notice that all contracts for employment must be in writing, signed by the president of the firm, and that terms and conditions of employment may be changed at any time with or without notice. Darke Dep., pp. 24-25; Roback Aff., Ex. 5.  "Modifications to at-will employment must be clear and definite and based on evidence that the parties plainly intended to enter into an employment relationship governed by such terms."  Alexander v. Progressive Cas. Ins. Co. 2005 U.S. Dist. LEXIS 31710, *9 (D. Minn. Nov. 22, 2005). Roback Aff., Ex. 18.  Darke admits there is nothing in writing that promises Vick's pay, and all promises she alleges were oral. Since there was no contract, summary judgment should be granted on Darke's breach of contract claim.  Id. at 9.

### B.     There is No Evidence to Support a Breach of Contract Claim Based on Promissory Estoppel.

Darke's breach of contract claim appears to be based upon alleged representations and "promises" made during "pre-employment discussions and

meetings" with Defendant. Darke claims the promises were: 1) Darke would receive a compensation plan/package similar to her predecessor during her employment in that position; and 2) when her supervisor Vick left employment with LBLCO, Darke would be offered Vick's position and compensation package. Complaint, ¶¶ 8a-b. Darke admits there is no written agreement to support these claims. Darke Dep., p. 63.

Although Plaintiff has not pled a promissory estoppel claim, Defendant will analyze the facts to show Darke has no breach of contract claim under the doctrine of promissory estoppel. Promissory estoppel is an equitable doctrine that implies a contract in law where no written contract exists. Martens v. Minnesota Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000).

To establish a contract claim based on promissory estoppel, the plaintiff must prove the following elements: 1) A clear and definite promise was made; 2) The promisor intended to induce reliance and the promisee in fact relied to his or her detriment; and 3) The promise must be enforced to prevent an injustice. Cohen v. Cowles Media Co., 479 NW2d 387, 391 (Minn. 1992). It is a question of law whether the facts as alleged rise to the level of promissory estoppel. Martens, 616 N.W. 2d at 746.

The facts, as alleged by Darke, do not rise to the level of a promise sufficiently clear and definite to be enforceable, and therefore these were not promises that could reasonably be expected to induce reliance. Opportunities for advancement must be specific and definite as to terms. Id.

There is no evidence that a clear and definite promise was made to Darke that she would receive a specific amount of compensation in the form of commissions. Darke relies on handwritten notes she found in her file during discovery that Kaufmann allegedly made during Darke's interview. The notes set out rough calculations of estimated commissions that could be earned under certain assumptions. Not all the writing on the page is Kaufmann's. Kaufmann Dep., pp. 82-83. Roback Aff., Ex. 14. Assumptions about wages based on estimated commissions are not equivalent to a clear and definite promise. Darke's hiring letter clearly states the compensation plan she will receive if she takes the job. There is no mention of specific amounts other than the $50,000 base salary. Only percentages of commissions are set forth in the offer letter. Roback Aff., Ex. 6. There is no evidence that the sketchy handwritten calculations made prior to the offer letter were intended to be part of Darke's compensation, and compensation terms are clear in the offer letter.

There is no evidence of a clear and definite promise that Darke would receive Vick's position or his compensation if and when Darke took over Vick's job. Furthermore, Darke never knew the specific terms of Vick's compensation at any time during her employment. Darke knew her terms of employment were always subject to change as stated in the application language.

Darke cannot meet the second element of a promissory estoppel claim, specifically that Kaufmann intended to induce reliance and Darke, in fact, relied to her detriment. When Darke applied for the position, she was not leaving stable

employment.  She stated in her application for employment that Prysm Group was unstable, and testified in her deposition that the business closed shortly after she left.  Darke Dep., p. 23.  Darke does not claim she turned down other employment while at LBLCO. Darke has not had a serious job interview or offer since she resigned, and she has started her own consulting business. Darke Dep., pp. 86, 91, 94.  There is absolutely no evidence to create a genuine issue of material fact as to detrimental reliance. Since a clear and definite promise does not exist, any reliance would be unreasonable. Javinsky v. Comm'r. of Admin, 725 N.W.2d 393 (Minn. App. 2007).

Finally, to satisfy the third element of a promissory estoppel claim, the promise must be enforced to prevent an injustice.  Enforcement to prevent injustice is a question of law taking into account the reasonableness of the promisee's reliance. Id. at 398. The promisee must show she relied on the promise to her detriment. Martens, 616 N.W.2d at 746.

Darke did not suffer an injustice.  Wage calculations show that Darke, in 2003-2004, did not earn enough in commissions to cover her guaranteed base salary of $120,000.  Roback Aff., Ex. 15.  To allow Darke to prevail on a promissory estoppel claim would be unjust enrichment to Darke.  If Darke had received Vick's compensation package while employed at LBLCO, she would owe LBLCO money.  Darke has already been unjustly enriched. Darke's deposition testimony that she would have taken Vick's salary even if she had

earned less than she actually received while at LBLCO, is irrational.  Darke Dep.,
p. 63.

     **C.**     **Darke's Breach of Contract Claim is Subject to a Two Year
Statute of Limitations.**

     If, under any analysis, the court was to find a legal basis for Plaintiff's
breach of contract claim, it must apply a two-year statute of limitations.  Minn.
Stat. § 541.07(5) provides for a two-year statute of limitations for the recovery of
wages or damages related to wages.  Kulinski v. Medtronic Bio-Medicus, Inc., 112
F.3d 368, 371 (8th Cir. 1997); Portlance v. Golden Valley State Bank, 405 NW 2d
240, 243 (Minn. 1987). Therefore, Darke cannot bring a breach of contract claim
for the time prior to March  7, 2004, two years prior to commencement of her
lawsuit.  Any alleged promises made at the time of her initial employment with
LBLCO or in 2003 when she was promoted to Vick's position are time-barred.
Summary judgment should be granted on Darke's breach of contract claim.

**III.**    **LBLCO DID NOT DISCRIMINATE AGAINST DARKE BASED ON
HER GENDER IN VIOLATION OF FEDERAL OR STATE LAW**

     Darke has not presented direct evidence of gender discrimination.
Therefore, Darke must prove her case under the burden-shifting framework of
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Peterson v. Scott
County, 406 F.3d 515, 521 (8th Cir. 2005). Under this framework, Darke must
establish a prima facie case of gender discrimination by showing (1) she was a
member of the protected class; (2) she was performing her job satisfactorily;
(3) she suffered an adverse employment action; and (4) she was treated differently

than similarly situated males.  Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624, 631 (8th Cir. 2005).  Discrimination claims brought under Title VII or the MHRA are subject to the same legal analysis. Wittenburg v. Am. Express Fin. Advisors Inc., 464 F.3d 831,842, n.16 (8th Cir. 2006); Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999).

If Darke can establish a prima facie case, LBLCO must then articulate a legitimate nondiscriminatory reason for its action. Darke can avoid summary judgment only if she presents sufficient evidence to raise a question of fact as to whether LBLCO's proffered reasons are pretextual and presents evidence to sustain a reasonable inference that gender was a determinative factor in LBLCO's decision.  Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1111 (8th Cir. 2001); see also, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

**A.   Darke Cannot Establish a Prima Facie Case of Gender Discrimination.**

**1.    Only Plaintiff's complaints within the applicable limitations period can be considered.**

Darke filed her Charge of Discrimination on January 18, 2006.  Only those acts that occurred within 300 days of January 18, 2006 or after March 24, 2005 are actionable under Title VII, and only those occurrences within one year of January 18, 2006 or after January 18, 2005 are actionable under the MHRA. Holland v. Sam's Club, 2007 U.S. App. LEXIS 12207. Roback Aff., Ex. 16.  The recent U.S. Supreme Court case, Ledbetter v. Goodyear Tire & Rubber Co., 2007

U.S. LEXIS 6295 held that a plaintiff cannot assert a Title VII pay discrimination claim for disparate pay received during the statutory limitations period but are a result of discriminatory decisions occurring outside that period. Id.; Roback Aff., Ex. 17.   Darke claims when she took over the duties and responsibilities of her predecessor, Vick, in May 2003, she asked for Vick's compensation package and was told that it was not available. Darke Dep., p. 42.   Any complaints of wage discrimination arising out of this promotion and the initial denial of her request are untimely.   Darke cannot make her claim timely by renewing requests that she knows are futile.

### 2.       Darke did not suffer an adverse employment action.

There is no dispute that Darke can meet the first two prongs of a prima facie case.   Darke is female, and performed her job to the satisfaction of her employer.   However, Darke cannot satisfy the third element of a prima facie case because she did not suffer an adverse employment action.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage."   Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005). "Mere inconvenience without any decrease in title, salary, or benefits" or only minor changes in working conditions do not meet the standard. Wedow v. City of Kan. City, MO, 442 F.3d 661, 671 (8th Cir. 2006) (citing Sallis, 408 F.3d at 476).

Darke claims she was not paid what her male predecessors were paid, she was told she was "greedy" and "not a team player," and an intermediary was placed between her and Kaufmann. Darke Dep., p. 69.

### a. Wage discrimination.

Darke accepted to the compensation that she received throughout her employment. She accepted the duties and responsibilities, and remained in her position. As an at-will employee, she was free to leave her employment if she was not satisfied with the wages. Furthermore, Darke was promoted in 2003 and in July 2004, Darke was given the title of President of the Leadership Group, and offered a directorship. The title of Director would have allowed Darke to receive a deferred compensation benefit upon signing a Director's Agreement. As consideration for the deferred compensation, the Director's Agreement contained a noncompete provision. Darke was not satisfied with the deferred compensation structure or the provisions of the noncompete. Kaufmann revised the Director's Agreement to tailor the deferred compensation benefit to Darke's salary consisting mainly of commissions, and made the noncompete provision applicable to Darke's position. Notwithstanding these changes, Darke refused to sign the Director's Agreement, and the directorship was withdrawn. Darke's refusal to sign the Director's Agreement did not result in a demotion or termination of her duties or position.

While Darke has not pled an Equal Pay Act claim, Title VII wage discrimination claims based upon unequal pay for equal work are analyzed under

the Equal Pay Act standard.  <u>Tenkku v. Normandy Bank</u>, 348 F.3d 737, 741 (8th Cir. 2003).  Under the Equal Pay Act, 29 U.S.C. §206(d)(1), a plaintiff must show that defendant discriminated against him or her on the basis of sex by paying different wages to employees of the opposite sex for equal work on jobs performed of which requires equal skill, effort, responsibility, and performed under similar work conditions.  A consideration of whether two jobs are substantially equal requires the court to look at the facts and circumstances of each case, including level of experience, training, education, ability, effort and responsibility.  <u>Horn v. Univ. of Minnesota</u>, 362 F.3d 1042, 1046 (8th Cir. 2004); <u>citing</u> <u>Lawrence v. CNF Transp., Inc.</u>, 340 F.3d 486, 492 (8th Cir. 2003).

It is clear that Vick had considerably more education, training and experience than Darke.  Vick had a college degree, while Darke did not.  Vick also brought to the firm 12 years of experience selling the tool, Predictive Index.  Darke had no experience with Predictive Index, and required extensive training.  Vick came to the firm with a client base to whom he already had sold Predictive Index, while Darke had no sales history with Predictive Index.  There are significant differences in the level of experience, education, training and work history between Vick and Darke.  Darke's conclusory allegation that her job was substantially similar or equal to Vick does not establish a prima facie case of wage discrimination.  <u>See</u> <u>Younts v. Fremont County</u>, 370 F.3d 748, 753 (8th Cir. 2004).

**b.      Comments she was "greedy" and "not a team player".**

The comment, "greedy" and "not a team player" are not gender-specific terms, and do not imply gender discrimination.   Furthermore, these comments were allegedly made outside the relevant time period.   In spite of Darke's constant complaining about compensation, she was promoted, her compensation increased over the years, and she was given bonuses.   Darke was even offered a directorship, which she refused.

**c.      Constructive discharge.**

Since Darke is alleging a constructive discharge in all counts of her Complaint, Darke's claim that she was forced to resign her employment will be discussed separately in **Section V**, *infra.*

**d.      Treatment of other female employees.**

In support of her gender discrimination claim, Darke brings up random incidents, wherein she claims other female employees were dissatisfied with their employment and quit.   Darke further alleges that females were treated differently at the firm.   (Complaint, Counts II-III).   In her deposition, Darke anecdotally testifies about incidents of other female employees, which she admits are based on second and third-hand knowledge.   Darke Dep., pp. 69-72, 75.   Darke admits she does not know if males were treated similarly.   Darke Dep., p. 72.   These incidents do not reflect discrimination on the basis of sex.   Generalized harassment in the workplace is not illegal under Title VII.   The critical issue is whether members of

one sex are subjected to unfavorable employment conditions to which the other sex is not.  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Title VII does not set forth "a general civility code for the American workplace." Id. at 80.

Conduct that is merely rude or unpleasant does not give rise to a claim of sex discrimination.  Instead, the conduct must be so extreme that it permeates the workplace with discrimination, intimidation, ridicule and insult.  LeGrand v. Area Res. For Cmty. and Human Servs., 394 F.3d 1098, 1101-02 (8th Cir. 2005).

The conduct Darke testifies about was allegedly directed at employees other than herself.  Even if this evidence is true, it is less significant than conduct directed at Darke.  See Hocevar v. Purdue Frederick Co., 233 F.3d 721, 741 (8th Cir. 2000) (Gibson, J. concurring).  Darke admits that no male made a pass at her. Darke Dep., p. 70. The only incident she recalls is a breakfast meeting in 2002, where her partner, Neil Lapidus, allegedly told her she was not working hard enough to justify her salary.  Darke Dep., p. 23.  This one incident is not gender related, and since it occurred in 2002, it is time-barred. Since there was nothing sexual or harassing directed at Darke, she cannot establish a prima facie case of sex discrimination.

Violations of Title VII consist of conduct that is extreme, and isolated instances do not amount to Title VII violations.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

### 3.     Darke was not treated differently than similarly situated males.

Darke has failed to put forth any credible evidence that she was treated differently than similarly situated male employees.  She also cannot show that she was replaced by a male employee.  Darke, therefore, cannot meet the fourth prong of her prima facie case.

In order for Darke to allege disparate treatment, she must compare herself to individuals who are similarly situated in all relevant aspects.  Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

Darke admits Vick complained about his compensation.  Darke Dep., pp. 45-46.  Vick told Kaufmann he was leaving the firm to take a position that paid more money.  Kaufmann Dep., pp. 46-48.  An at-will employee is free at any time to leave to seek a better opportunity.  There is evidence that both males and females had the same complaints, and therefore, failure to meet an employee's wage expectation is not gender discrimination if both male and female have the same complaints.  Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624, 631 (8th Cir. 2005).

### 4.     Darke was not replaced by a male.

Darke also has no facts to support her conclusion that the hiring of individuals following her voluntary resignation was discriminatory.  Once it was clear to LBLCO that Darke quit, it was a reasonable business decision to fill her position.  After Darke's departure, a female was hired to assume Darke's duties.

Kaufmann Dep., p. 21.  No reasonable inference of gender discrimination can be made from these facts.  Darke cannot satisfy the fourth prong of her prima facie case.

There are no facts that give rise to an inference of gender discrimination to meet the third and fourth prongs of a prima facie case.  There is no evidence that Darke suffered an adverse employment action or that similarly-situated males received better treatment than females.

### B.    LBLCO Had a Legitimate, Non-discriminatory Business Interest.

Assuming Darke can establish a prima facie case of gender discrimination, LBLCO must then produce evidence of a legitimate, non-discriminatory reason for its actions.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  LBLCO's burden is one of production and not persuasion and does not at this point involve a credibility assessment.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).  Once LBLCO meets its burden of production, Darke must show that LBLCO's reasons for its actions are pretext.

In 2003, LBLCO made a business decision that the previous compensation plan, primarily based on commissions from individual sales of new business, made the Leadership group employees too competitive.  In order to foster teamwork, a new commission plan was implemented, based on a departmental incentive and using a formula that rewarded individuals on departmental sales.  Kaufmann Dep., p. 105.  The Executive Committee explained this new compensation plan to Darke

in a memorandum dated May 17, 2004.  Roback Aff., Ex. 8.  Compensation is set by the Executive Committee.  LBLCO does not make compensation decisions based solely on what the employee wants to receive.  Kaufmann Dep., p. 106.

The test is not whether the reasons are wise, fair, or correct, but whether the employer honestly believed the reasons. Dorsey v. Pinnacle Automation Co., 278 F.3d 830 (8th Cir. 2002).  Courts will not sit as super personnel departments to review the wisdom of business decisions.  Grabovac v. Allstate Ins. Co., 426 F.3d 951, 956 (8th Cir. 2005).

### C.   Darke Cannot Produce Any Evidence of Pretext.

If Darke can set forth a prima facie case, and LBLCO has articulated a legitimate, nondiscriminatory business reason, the burden of proof reverts to Darke to put forth evidence that LBLCO's reason was pretextual. Hesse, 394 F.3d at 631.  Darke must present sufficient rebuttal evidence to create a genuine issue of material fact.  A causal connection between Darke's gender and the claimed adverse action must be shown.  Matson v. Cargill, Inc., 618 F. Supp. 278, 281 (D. Minn. 1985).  Darke's "subjective beliefs and bare allegations" are not enough to establish this connection.  Schibursky v. Int'l. Bus. Machs. Corp., 820 F. Supp. 1169, 1176 (D. Minn. 1993).

Pretext can be shown by evidence that similarly situated employees were treated more favorably.  Putnam v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003). Dark cannot show more favorable treatment toward other similarly situated male employees who "have dealt with the same supervisor, have been subjected to

the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."   Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

Darke cannot merely offer an opinion that she was treated differently; she must "substantiate her allegations with more than 'speculation, conjecture, or fantasy' in order to survive summary judgment.   Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037 (8th Cir. 2004) citing Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003).

The only evidence Darke relies on is her "belief" that Randy Vick, her predecessor, had a better compensation plan which was not available to her, and when she asked for Vick's compensation, she was denied. The facts show Vick and Darke were treated the same. Vick was unhappy with his compensation, he asked LBLCO for an increase and was denied.  Kaufmann Dep., pp. 46-48.  Vick chose to take another job.

Differential treatment of employees does not prove pretext as long as sex is not a factor.   See Cooney v. Union Pac. R.R. Co., 258 F.3d 731 (8th Cir. 2001). Darke has no evidence to show her gender was a factor in any decisions regarding her employment at LBLCO.  A plaintiff facing a summary judgment motion cannot get to a jury without any significant probative evidence tending to support the complaint.  Buettner v. Eastern Arch Coal Sales Co., Inc., 216 F.3d 707, 718 (8th Cir. 2000).

## IV.    LBLCO DID NOT RETALIATE AGAINST DARKE IN VIOLATION OF FEDERAL OR STATE LAW

Darke contends that she was retaliated against for bringing complaints about her wages and by not signing the Director's Agreement.  Title VII prohibits an employer from taking any adverse employment action against an employee who has opposed any practice made on an unlawful employment practice under Title VII.  24 U.S.C. §2000e-3(a).  The MHRA similarly prohibits an employer from intentionally engaging in any "reprisal" against someone who opposes a practice forbidden by the MHRA.  Minn. Stat. § 363A.15.  "Reprisal" is defined as "any form of intimidation, retaliation or harassment."  Id.  Retaliation claims under Title VII and the MHRA are analyzed under the same standard.  Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001).

To establish a prima facie case of retaliation or reprisal, Darke must show that (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; (3) she suffered an adverse employment action; and (4) the materially adverse action was causally linked to the protected conduct.  Burlington N. & Sante Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006); Higgins v. Gonzales, 481 F.3d 578, 588 (8th Cir. 2007).

### A.    Drake Did Not Engage in Protected Activity.

Darke cannot claim she was retaliated against because of her complaint of gender discrimination.  Although Darke repeatedly voiced dissatisfaction with her compensation structure while at LBLCO, she never claimed in writing or orally

that her compensation was based on her gender or that LBLCO had a practice of paying women less than men.   She never filed a complaint of gender discrimination while at the firm, even though the handbook contains a policy for lodging complaints of discrimination.   Cornman Dep., pp. 17-18.   Her resignation letter does not contain allegations of gender discrimination.   Darke admits her complaints about compensation were complaints made by her male predecessor as well.   Darke Dep., pp. 45-46.

Darke continually asked for the same compensation package that Vick had; however, she never claimed gender discrimination was the basis for denying her Vick's package.   Darke never filed a complaint of gender discrimination with Human Resources, nor did she use those words at any time while complaining about her compensation.   Kaufmann Dep., p. 210.

### B.     Drake Did Not Suffer an Adverse Employment Action.

In order to meet the second element, Darke must show that the actions of LBLCO were "materially adverse" to an employee who engaged in protected activity.   Burlington N., 126 S. Ct. at 2415.   The Supreme Court in Burlington N. further clarified that standard is objective, requiring the court "to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions." Higgins, 481 F.3d at 589; Burlington N., 126 S. Ct. at 2412-13.   The focus is whether the conduct is "materially adverse" in order to separate "significant from trivial harms".   Burlington N., 126 S. Ct. at 2415.

Darke cannot establish the second prong of a prima facie case of retaliation because there is no evidence that she experienced a materially adverse employment action.  The retaliatory conduct she claims consisted of being threatened by Cornman that she be terminated, demoted and stripped of her duties, having Kaufmann check up on her, and being physically moved to another office. Darke Dep., p. 79.

One example of retaliation Darke gives is that Kaufmann came "back into my area and checking on my whereabouts, asking who I was with, the phone number, what clients I had lost over the years, their numbers, tracking me."  She also claims she was in isolation, and that she was physically moved to a different part of the building away from everyone else.  Darke Dep., pp. 79-80.  Kaufmann was Darke's supervisor, and had a right to check on her performance.  As for Darke's claim that she was physically moved to a different part of the building, she neglects to state that there was construction in progress, and the Leadership Group was one of two groups that were relocated during the construction. Kaufmann Dep., p. 164.  Darke had a larger office than male employees.  Id. These examples do not rise to the level of an adverse employment action.

Darke further claims that she was isolated by having to speak to Cornman about her compensation.  Cornman was the Human Resource Manager, and dealt with compensation issues for all employees.  Kaufmann never told Darke that he refused to speak to her at all.  Kaufmann Dep., pp. 134-35.

Employment actions which are trivial or consist of "petty slights or minor annoyances" are non-actionable under the retaliation provisions.  <u>Higgins</u>, 481 F.3d at 589-90, <u>citing</u> <u>Burlington N.</u>, 126 S. Ct. at 2415.

Cornman's comments, even if made, do not constitute an adverse employment action.  Cornman was not the decisionmaker.  Darke reported to Kaufmann.  Darke Dep., p. 32.  Darke emailed Cornman immediately after he allegedly made these comments to ask if she was going to be demoted or terminated.  Cornman replied, in an email, that she would retain her duties as President.  Roback Aff., Ex. 9.  On May 11, 2005, Darke also had a meeting with Kaufmann, her supervisor, immediately after Cornman allegedly made these comments.  Darke took notes of this meeting, which confirm that Kaufmann assured Darke that she was not going to be terminated or demoted, he told her that the firm wanted her to stay in her current position.  Darke Dep., pp. 52-54; Roback Aff., Ex. 10.  There was no adverse employment action within this factual setting.

Darke has no evidence other females at LBLCO were retaliated against.  She testified that "instead of staying for any kind of a retaliation period, they avoided it completely and left."  Darke Dep., p. 81.  Darke also does not know if any of these employees made a complaint, if management took action, or if complaints were resolved.  Darke Dep., p. 82.

Darke has no probative evidence to raise a genuine issue of material fact to support her claims of retaliation under Title VII or reprisal under the MHRA.

Defendant is entitled to summary judgment on Plaintiff's retaliation/reprisal claims.

### C. No Causal Relationship Between any Complaints and any Materially Adverse Employment Actions.

Darke cannot establish a causal relationship between any complaints she made and any adverse employment action. The only complaints Darke made concerned her compensation. Even though she constantly complained about compensation, she was promoted, offered a directorship and rewarded with bonuses. Since Darke cannot prove protected conduct or a materially adverse employment action, there can be no causal relationship.

## V. CONSTRUCTIVE DISCHARGE

In all counts of her Complaint, Darke claims she was constructively discharged from her employment with LBLCO. Darke alleges constructive discharge as part of her breach of contract claim and as adverse employment actions as elements of her gender discrimination and retaliation claims. (Complaint, Counts I-V). She specifically alleges the following conduct made it impossible for her to continue working at LBLCO: (1) broken promises about compensation; (2) comments that she was greedy; (3) a person was hired person to take duties; and (4) Cornman was put in as an intermediary. Plaintiff claims these acts constituted adverse employment actions and collectively caused a constructive discharge from her employment. Darke Dep., pp. 68-69.

Under both Eighth Circuit and Minnesota law, "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing the employee to quit." Tatum v. Ark. Dep't. of Health, 411 F.3d 955, 960 (8th Cir. 2005) citing Baker v. John Morrell & Co.; 382 F.3d 816, 829 (8th Cir. 2004); Duncan v. General Motors Corp., 300 F.3d 928, 935 (8th Cir. 2005). The employee must show that the employer intended to force her to quit or, at a minimum, that the employee's resignation was reasonably foreseeable as a result of its actions. Id.; see also, Dietz v. Minnesota Min. & Mfg., 564 N.W.2d 575, 579 (Minn. Ct. App. 1997); Pribil v. Archdiocese of St. Paul and Minneapolis, 533 N.W.2d 410, 412 (Minn. Ct. App. 1995).

It is not the employee's subjective feelings that are determinative in a constructive discharge claim, but rather the employee must show that the conditions created by the employer were such that a reasonable person would find them intolerable. Gartman v. Gencorp. Inc., 120 F.3d 127, 130 (8th Cir. 1997); Parrish v. Immanuel Medical Ctr., 92 F.3d 727, 732 (8th Cir. 1996). The employer's actions must be deliberate, taken with the intention of forcing the employee to quit, or, in the absence of conscious intent, the employer's intent can be inferred when the employee's resignation is reasonably foreseeable. Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349, 354 (8th Cir. 1997); Phillips v. Taco Bell, 156 F.3d 884, 885 (8th Cir. 1998).

Darke alleges that broken promises about compensation caused her to resign her employment. However, Darke was told in 2003 that Vick's

compensation package was not available.  She continued to work at LBLCO, and accepted her compensation package.  Darke Dep., pp. 43, 45; Roback Aff., Ex. 8. Furthermore, she was promoted to President of the Leadership Group, and offered a directorship in July 2004.  These are positive, not adverse, employment actions. Darke never resigned until May 2005

Finally, on May 11, 2005, Kaufmann asked Darke for a compensation proposal and told her he would take it to the Executive Committee.  This is not an act of an employer who is forcing an employee to quit.  Darke never submitted a proposal; she resigned and told the firm she would be requesting severance pay. Darke Dep., pp. 54-55; Roback Aff., Ex. 11.

An employee cannot establish constructive discharge if the employee assumed the worst about the employer or made a drastic decision too quickly without taking some affirmative steps to complain internally and offer the employer a reasonable opportunity to address the problems before the employee resigns.  Jones v. Fitzgerald, 285 F.3d 705, 716 (8th Cir.2000).

Darke took no steps to follow through with Kaufmann's request to bring a compensation proposal to the executive committee. She resigned and left without giving the firm the opportunity to work things out.  "An employee who quits without giving its employer a reasonable chance to work out a problem has not been constructively discharged."  West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir. 1995); Thompson v. Bi-State Dev. Agency, 463 F.3d 821,825 (8th

Cir. 2006).   LBLCO cannot be held liable for constructively discharging Darke without having been given such an opportunity.

Darke also claims she was forced to resign because she was called "greedy" and "not a team player." None of the comments about which Darke complains were sex-based or so offensive as to compel her resignation.  Vick was also told he was not a team player.  Kaufmann Dep., pp. 162-163.

Darke further alleges as a basis for her constructive discharge claim that LBLCO hired someone to take over her duties.  This claim is not supported by the facts.   The decision to hire another person for the Leadership Group was made well before Darke resigned.  Darke wanted to hire a trainee.  Darke Dep., p. 110; Kaufmann Dep., p. 153.  However, the Executive Committee decided it was better for the firm to institutionalize the Leadership Program and hire a lower level employee that could sell, train and build client relationships.   Kaufmann Dep., pp. 153-54.  There was concern that Darke might resign because she was always unhappy with her compensation.  Id.  However, Mary Rose Iten, who assumed Darke's duties, was not hired until after Darke left LBLCO.   Kaufmann Dep., pp. 16, 21.  Marshall Lehman, a partner, temporarily assumed Darke's duties after she resigned.  Kaufmann Dep., p. 20.

Courts have not found constructive discharge in cases where, although the plaintiff complained of unfair criticism, the evidence showed that defendant viewed plaintiff as highly valued employee that it had no intention of replacing. Tatom v. Georgia-Pacific Corp., 228 F.3d 926 (8th Cir. 2000); Tork v. St. Luke's

<u>Hosp.</u>, 181 F.3d 918 (8th Cir. 1999) ("feeling of being unfairly criticized or having to endure difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."); <u>see also</u>, <u>Horn v. Univ. of Minnesota</u>, 362 F.3d 1042, 1047 (8th Cir. 2004).

Darke has failed to raise a genuine issue of material fact regarding her constructive discharge claim.

### CONCLUSION

Darke cannot raise a genuine issue of material fact as to the elements of her breach of contract claim, her gender and retaliation discrimination claims under Title VII and the MHRA and her constructive discharge claim. Therefore, based on the above cited facts and law, summary judgment is appropriate on all of Darke's claims, and Darke's Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

**DONNA L. ROBACK, P.A.**

Dated:  June 5, 2007            s/ Donna L. Roback
                                Donna L. Roback (92046)
                                5200 Willson Road, Suite 150
                                Edina, MN 55424
                                (952) 836-2777

                                Attorney for Defendant Lurie Besikof Lapidus
              `                 & Company, LLP